(681 P.2d 25)
No. 55,699

COLORADO INTERSTATE GAS COMPANY, *Appellant*, v. FRANK E. DU-FIELD, *Appellee*.

Opinion filed May 3, 1984.

*William J. Graybill,* of Lawyers Graybill, of Elkhart, and *Stephen G. Koerner,* of Colorado Interstate Gas Company, of Colorado Springs, Colorado, for appellant.

*Arthur B. McKinley,* of McKinley, Miller & Swanson, P.A., of Sublette, for appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is an appeal in a declaratory judgment action brought by the appellant, Colorado Interstate Gas Company (CIG), to ascertain its right to $2,666 held in escrow to cover any damages caused by CIG's installing a pipeline across property owned by Frank E. Dufield.

The right-of-way agreement states in pertinent part:

"Grantee does hereby covenant to pay Grantor for all actual and reasonable damages incurred in the laying out, constructing, maintaining, operating, altering, replacing or removing of said pipeline, and covenants to now pay $1,000.00 as prospective damages to crops, land surface and Grantor's irrigation systems, and further agrees to place in escrow in interest bearing account at the Peoples National Bank, Liberal, Kansas, the sum of $2,666.00 to be used and applied toward compensating Grantor for all such damages that are determined by the parties to be caused Grantor. Grantor covenants that he will immediately notify Grantee of any damage done and to the extent that good and workmanlike farming practice will permit, will provide Grantee sufficient time to examine and verify such damages and the opportunity for Grantee to correct or remedy the same if Grantee so elects."

The pipeline was constructed in January 1977. The pipeline was laid out perpendicular to the crop rows and irrigation system used on the 90.5-acre field, thereby dividing the field so that 27 acres were east of the pipeline and 63.5 acres were west of it. The irrigation system had been constructed so that the entire field could be flood irrigated with water flowing from west to east.

When the trench was cut to lay the underground pipeline, CIG cut through the hardpan, a water-impermeable layer beneath the top soil, which resulted in irrigation water sinking into the pipeline trench and draining into the sandy subsoil. Walter Dufield, the cash tenant, had difficulty getting irrigation water across the pipeline ditch to irrigate the east 27 acres. He testified at trial that sometime in 1977 or 1978 he made a couple of telephone calls to CIG to notify it of the problem. He did not recall either the date or the name of the person with whom he talked.

To properly irrigate the entire field, Walter Dufield laid additional irrigation pipeline on the east side of the trench. He presented evidence at trial that his additional annual cost incurred to irrigate below (east of) the pipeline was $627.

In October 1980, Frank Dufield made written demand for the first time on CIG for the $2,666 in the escrow account, based on the damages suffered by reason of his having to irrigate below the pipeline each year. Walter Dufield testified that the water problem at the date of trial was not much different than it had been in 1977 or 1978.

On January 16, 1981, CIG filed this action, requesting that the court ascertain the rights and liabilities of the parties as to the $2,666 in the escrow account as provided for in the right-of-way agreement. The trial court found that Frank Dufield had sufficiently proven damages to entitle him to the money in the escrow account and CIG timely appeals from that judgment.

I. Notice Requirement.

Whether or not notice was given or received is a question of fact for the trier of fact. *Thomas v. Evans,* 200 Kan. 584, 589, 438 P.2d 69 (1968).

When the trial court has made findings of fact and conclusions of law, this court's function on appeal is to determine whether the findings are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law. *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976).

" '. . . Actual notice means, among other things, knowledge of facts and circumstances so pertinent in character as to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.' " *Thomas v. Evans,* 200 Kan. at 587; *Lane v. Courange,* 187 Kan. 645, 648, 359 P.2d 1115 (1961).

". . . 'Notice' means intelligence by whatever means communicated; information; knowledge." *Koehn v. Central National Ins. Co.,* 187 Kan. 192, 200, 354 P.2d 352 (1960).

Here, Walter Dufield testified at trial that sometime in 1977 or 1978 he made a couple of telephone calls to CIG to notify it of the problem with irrigation. Walter Dufield and J. M. McDowell, a representative of CIG, both testified that Walter told McDowell sometime in the summer of 1977 that he was having problems with the pipeline, but neither witness could remember anything further about the conversation. A reasonable person could accept this evidence as sufficient to support the conclusion that Walter Dufield notified CIG in 1977 of the damage caused

by the pipeline. *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, Syl. ¶ 3, 630 P.2d 1131 (1981).

The appellant next complains that even if notice was given in 1977, it was insufficient based on *State v. Buckle,* 4 Kan. App. 2d 250, Syl. ¶ 7, 604 P.2d 743 (1979), which holds that notice that does not fairly apprise a party of the action proposed to be taken is no notice at all. *Buckle* deals with procedural due process notice required by statute before a default judgment can be taken. The right-of-way agreement here contains no language that would modify the plain and ordinary meaning of the word "notify," and therefore that meaning is controlling. *Mears v. Hartford Fire Ins. Co.,* 8 Kan. App. 2d 760, 762, 667 P.2d 902 (1983).

The appellant next complains that the trial court erroneously excluded two letters that Walter Dufield's attorney wrote to Walter requesting him to itemize his damages for CIG. The appellant requested admission of the letters as relevant to the issue. The trial court held that the two letters were irrelevant and immaterial to the issue of whether the Dufields had notified CIG of any damage done, apparently distinguishing between damage (injury) versus damages (compensation). Relevancy is a matter of logic and experience, and the trial court naturally possesses a certain amount of discretion in this area. *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 624, 567 P.2d 1359 (1977). The letters from Walter's attorney to Walter asking him to provide CIG with a monetary breakdown of damages would have no tendency in reason to prove that the Dufields did not notify CIG in 1977 of damage (injury) to the irrigation system and, therefore, to the land. The trial court did not abuse its discretion in refusing to consider the letters. *Skahan v. Powell,* 8 Kan. App. 2d 204, 208, 653 P.2d 1192 (1982).

II. Damages.

The appellant next challenges the sufficiency of the evidence to support the trial court's finding of actual damage to support a recovery of the $2,666 in the escrow account. When a decision is attacked for sufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. *International Petroleum Services, Inc. v. S & N Well Service, Inc.,* 230 Kan. 452, Syl. ¶ 8, 639 P.2d

29 (1982); *Schatz Distributing Co. v. Olivetti Corp. of America,* 7 Kan. App. 2d 676, Syl. ¶ 1, 647 P.2d 820 (1982).

CIG bases this argument on the fact that crop production *went down* after Walter installed extra pipe to irrigate the lower 27 acres and therefore Walter did not suffer any crop loss by not having the 27 acres irrigated. The Dufields, however, have never claimed damage for crop loss. The only damage claimed is loss of the value of the land due to a specific injury to the irrigation system on the land to be measured by the cost of laying additional pipe to irrigate the 27 acres east of the pipeline.

There was testimony that the cost of the additional irrigation would be incurred until the hardpan built up again, which would be several years. This cost was shown to have been caused by the pipeline installation and was necessary to get water to the land and thereby restore the system to its previous condition. There was damage, and the cause of it was established with reasonable certainty. *Marcotte Realty & Auction, Inc. v. Schumacher,* 229 Kan. 252, 624 P.2d 420 (1981).

III. Real Party in Interest.

CIG next argues that because Frank Dufield owned the farm but Walter Dufield leased it and incurred all expenses in his own name, Walter may have suffered damages but Frank suffered no crop damages at all and therefore had no claim for the escrowed funds.

The purpose of the real party in interest rule is to require that the action be brought by the person who, according to the governing substantive law, possesses the right sought to be enforced and not necessarily the person who ultimately benefits from the recovery. *Lawrence v. Boyd,* 207 Kan. 776, 486 P.2d 1394 (1971); *Thompson v. James,* 3 Kan. App. 2d 499, 597 P.2d 259 (1979). The purpose of the rule has been attained if the defendant is not shut out of defenses or counterclaims and will be fully protected by the judgment against further liability on the same cause of action. *Hall v. Pioneer Crop Care, Inc.,* 212 Kan. 554, 512 P.2d 491 (1973); *Winsor v. Powell,* 209 Kan. 292, 497 P.2d 292 (1972); *Lawrence v. Boyd,* 207 Kan. 776.

CIG brought this declaratory action against only Frank Dufield, the owner of the land, to determine whether it or Frank Dufield has the legal right to the escrowed funds, which were to be paid to Frank for *any damage to land or irrigation systems.*

Walter Dufield was not a party to the right-of-way agreement, but within a month after the execution of that agreement CIG requested and received a release from Walter of all liability for damages arising from the pipeline installation. The release stated that all damages would be determined under the method outlined in the right-of-way agreement and further that all damages would be paid to Frank, and Walter, as tenant, would look to and be compensated by Frank for all damages due Walter as such tenant.

We conclude that Frank Dufield was the real party in interest in this action. He had the substantive right under the right-of-way agreement to damages for injury to his land or irrigation systems. He proved at trial that his land had been damaged when CIG broke the hardpan. He also proved that his irrigation system had been damaged, and that the cost of laying and taking up irrigation pipe will continue for an indefinite period in the future. CIG contracted to pay for damages to the land and irrigation systems. The tenant, Walter Dufield, paid the current expenses of repairing the irrigation system but released CIG of all liability. CIG's requesting the release and the language used in it indicate that CIG wanted to deal solely with Frank and would pay him for *all* damage to his land and irrigation systems even though the tenant suffered some of those damages. There is no requirement in the agreement or release that Walter sue Frank before Frank could claim the escrow account. Even though Walter paid the expense of repair, CIG could defend against a suit brought by Walter by pleading the tenant's release. CIG brought this action against Frank only. It failed to join Walter and did not complain before or during trial. This issue was not before the trial court until CIG filed a motion to alter or amend the final judgment. In any event, the future cost of irrigating the land is more than the amount in controversy, and the trial court did not err in awarding the escrowed funds to Frank Dufield.

IV. Liquidated Damages.

CIG's final argument is that the trial court erred in finding that the escrow provision was one for "liquidated damages."

Errors that do not prejudice the substantial rights of a party afford no basis for a reversal of a judgment and must be disre-

garded. *Kansas Savings & Loan Ass'n v. Rich Eckel Construction Co., Inc.,* 233 Kan. 493, Syl. ¶ 1, 576 P.2d 212 (1978).

Although the trial court classified the escrow provision as one for liquidated damages, it also specifically found that defendant proved actual damages in loss of value of the affected land sufficient to satisfy the requirements of the provision and support recovery of the stipulated amount. We have determined that the actual damages found were supported by substantial competent evidence, and any error by the trial court in classifying this clause as one for liquidated damages provides no basis for a reversal of the judgment and must be disregarded.

Affirmed.